GUSTAVE SCHULER, Respondent, v. METROPOL-
ITAN LIFE INSURANCE COMPANY, Appel-
lant.

St. Louis Court of Appeals.   Argued and Submitted April 7, 1915.
Opinion Filed May 4, 1915.

1. **LIFE INSURANCE: Laws Governing.** A life insurance policy
issued by a foreign corporation, which is negotiated in this
State, with a resident and citizen of this State, is delivered
here, and the premiums on which are collected here, is a Mis-
souri contract and subject to its laws.

2. ————: ————: **Erroneous Admission of Evidence: Harmless
Error: Appellate Practice.** In an action on a life insurance
policy issued by a foreign corporation, but which, by · reason
of having been issued in this State to a citizen of this State,
etc., was subject to the laws of this State, it was error to admit
in evidence a law of the State in which the company was organ-
ized, which required the policy to contain the entire contract
between the parties and provided that nothing should be in-
corporated therein by reference to any application or other
writing not indorsed upon or attached to the policy when issued;
but such error was not prejudicial to the company, since the
effect of that law is the same as Sec. 6978, R. S. 1909, requiring
insurance companies to attach to every policy and to indorse
thereon the substance of the application on which such policy
was issued and which is made a part of the contract of in-
surance, or referred to therein, or which may in any manner
affect the validity of the policy.

3. **APPELLATE PRACTICE: Erroneous Admission of Evidence:
Harmless Error.** The erroneous admission of evidence will not
work a reversal, where the party complaining of its admission
could not have been prejudicially affected by it.

4. **LIFE INSURANCE: Failure to Attach Application to Policy:
Applicability of Statute to Foreign Corporation.** Sec. 6978,
R. S. 1909, requiring insurance companies to attach to every
life insurance policy, or endorse thereon, the substance of the
application on which it was issued, applies to a company con-
ducting business in this State, although it was organized under
the laws of another State.

5. ————: ————: **Effect.** While the failure of a life insurance
company to attach to, or endorse on, a policy the substance of
the application on which it was issued, as required by Sec. 6978,

R. S. 1909, does not invalidate the policy, such failure precludes the company from introducing the application in evidence to support its defense of misrepresentations therein, although the statute fixes no penalty for failure to observe it.

6. **LAWS: Rights not Predicable on Disobedience.** One who fails to obey the law cannot base any right on such disobedience.

7. **LIFE INSURANCE: Action on Policy: Conclusiveness of Verdict.** In an action on a life insurance policy, where there was testimony for plaintiff that the answers of insured to the examining physician differed from those written down by the physician, a verdict finding for plaintiff on that evidence is conclusive, on appeal.

8. **APPELLATE PRACTICE: Conclusiveness of Verdict.** A verdict rendered on conflicting evidence is conclusive, on appeal, where the jury are properly instructed as to the law.

9. **TRIAL PRACTICE: Weight of Evidence: Questions for Jury.** The determination of what weight is to be given the evidence is a question for the jury.

10. **APPELLATE PRACTICE: Review: Weight of Evidence.** An objection that the verdict is against the weight of the evidence ·is for the consideration of the trial court, not the appellate tribunal.

11. **LIFE INSURANCE: Failure to Attach Application to Policy: Effect.** Where, in an action on a life insurance policy, the application for the policy was erroneously admitted in evidence, because not attached to, or endorsed on, the policy, as required by Sec. 6978, R. S. 1909, it was not error to exclude answers propounded to the examining physician based on the application.

12. ———: **Trial Practice: Reception of Evidence: Discretion of of Court.** In an action on a life insurance policy, defended on the ground of misrepresentation in the application, where the examining physician had been allowed to testify generally that the answers of insured to the questions asked him were as written by him in the application, it was within the discretion of the trial court to refuse to permit a separate examination as to each question and answer appearing in the application.

13. **WITNESSES: Competency: Transactions with Deceased Agent: Appellate Practice: Harmless Error.** In an action on a life insurance policy, evidence of a conversation between insured and the agent who solicited the insurance is not admissible against the company, after the death of the agent, under Sec. 6354, R. S. 1909; but the erroneous admission of such evidence may be harmless where it is merely cumulative and is only brought in casually.

14. **APPELLATE PRACTICE: Erroneous Admission of Evidence: Harmless Error.** In an action on a life insurance policy, the erroneous admission in evidence of a conversation between insured and a deceased agent of insurer was not prejudicial to defendant, where it was merely cumulative to other evidence of the same fact testified to beyond question, and was brought in only casually.

15. **LIFE INSURANCE: Misrepresentation in Application: Instructions.** In an action on a life insurance policy, defended on the ground of misrepresentation in the application, *held* that it was proper for the court to modify instructions requested by the defendant, directing a verdict for it, under certain hypotheses, by adding thereto, "unless the jury find that defendant waived the truth of the representations made by insured."

16. ——————: **Vexatious Refusal to Pay: Instructions.** In an action on a life insurance policy, where the court instructed the jury that if the refusal of the company to pay was vexatious—that is, without reasonable cause—they might allow interest and a reasonable attorney's fee, it was not error to refuse a requested instruction further defining "vexatious," since the instruction given sufficiently defined that term.

17. **INSTRUCTIONS: Refusal: Covered by Other Instructions.** It is not error to refuse an instruction which defines a term used in the instructions, where that term is correctly defined in other instructions given.

18. **LIFE INSURANCE: Examining Physician: Agency.** A physician who examines an applicant for life insurance at the instance of insurer is an agent of insurer.

19. ——————: **Misrepresentation in Application: Instructions.** In an action on a life insurance policy, defended on the ground of misrepresentation in the application concerning the health of insured, an instruction that if the jury found that the insured, or any one for her, made known her condition to an agent, or superintendent, or examining physician, or if such agent, superintendent, or medical examiner knew of such fact, his knowledge would be the knowledge of the company, and, if the company with said knowledge issued and delivered the policy, it waived the defense, was not erroneous, as imputing to the company the knowledge of every agent it might have, where the evidence showed that the agents who had such knowledge were the examining physician and the assistant manager or superintendent.

20. **INSURANCE: Knowledge of Agent: Effect.** The knowledge of the local agent who negotiates an insurance policy is the knowledge of the company, notwithstanding a contrary provision in the application or policy.

21. **INSTRUCTIONS: Credibility of Witnesses.** Where there is a sharp conflict in the testimony of the witnesses as to a material fact, it is proper to give the ordinary instructions as to the credibility of the witnesses, although no witness was impeached by evidence of bad reputation for truth or veracity.

22. **INSURANCE: Vexatious Refusal to Pay: Attorney's Fee: Sufficiency of Evidence.** In an action on an insurance policy, where, for the purpose of recovering an attorney's fee, under Sec. 7068, R. S. 1909, on account of insurer's vexatious refusal to pay, the attorney for plaintiff testified generally as to the reasonable value of his services, without setting out the services in detail, and defendant did not cross-examine him, defendant would not be heard, on appeal, to complain of an allowance for the amount testified to by the attorney.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

AFFIRMED (*conditionally*).

*Nathan Frank* and *Louis B. Sher* for appellant.

(1) The court erred in admitting sec. 58, vol. 3 of the Laws of the State of New York requiring the application to be endorsed upon or attached to the policy when issued. The policy in suit was issued and delivered in Missouri and therefore the laws of this State govern. Whittaker v. Insurance Co., 138 Mo. App. 664; Haven v. Insurance Co., 149 Mo. App. 291. (2) It was error for the court not to allow Dr. Haase, the examining physician, to answer the following questions: "I will ask you to state to the jury whether or not you asked this question and she made this answer: The following is the name of the physician who last attended me, the date of the attendance, and the name of the complaint for which he attended me. Dr. Applewhite, Confinement, 1906;" "I will ask you to state to the jury whether or not Mrs. Schuler mentioned the name of Dr. Blank to you at all?" This was a vital issue in the case and the plaintiff and witness Lula Price were permitted to testify to what was told the

examining physician at the time of his making his examination of the insured. (3) It was error for the court to allow the plaintiff to testify that Pumpelley, the soliciting agent, had told plaintiff that Mrs. Schuler was an unsafe risk and had asked the said plaintiff to have the policy changed from a twenty-year life to a twenty-year endowment, and had written him a letter to that effect, without the witness producing said letter. There was evidence by both parties in the case that the said agent who procured the application for defendant was dead. Crosno v. Bowser Milling Co., 106 Mo. App. 236; Bank v. Thayer, 184 Mo. 61; Williams v. Edwards, 94 Mo. 447; McCormick Harvesting Machine Co. v. Heath, 65 Mo. App. 461; Nelson v. Railroad, 66 Mo. App. 647. (4) The insured is bound by her statements in the application in the absence of a showing of fraud or deceit on the part of the agent writing the application. And as there was no allegation in the reply that the said application was procured by fraud, it was error for the court to allow the witnesses to testify to what they had told the examining physician. Holloway v. Insurance Co., 48 Mo. App. 5; School District v. Insurance Co., 61 Mo. App. 600; Lamar v. Insurance Co., 51 Mo. App. 447. (5) The court erred in modifying the instructions requested by the defendant by adding to each of the same "that the verdict should be for plaintiff unless they found under the instructions in the case that the defendant waived the truth of the representations made by the insured." (6) The court erred in refusing to give the following instruction: "The jury are instructed that by the term vexatious as used in these instructions is meant action not taken in good faith and with probable cause, but rather in an effort to embarrass or annoy." It is the duty of the court to explain to the jury the meaning of legal or technical terms occurring in an instruction. Greene v. Railroad, 119 Ky. 862, 84 S. W. 1154; Holmes v.

Clisby, 121 Ga. 241. Where there is a request to de-
fine or explain technical terms in an instruction, it is
error to refuse such request. Quirk v. St. Louis U.
El. Co., 126 Mo. 279; Johnson v. Railroad, 90 Mo. 340;
Rattan v. Central El. Co., 120 Mo. App. 270. (7) The
court erred in giving instruction No. — at the request
of plaintiff. Knowledge to every agent of a corpora-
tion is not legal knowledge to said corporation. There
must be an authority shown for the agent to take the
application, fill up the same and do all things which
may be needful in procuring it, and that the knowl-
edge so acquired by the agent must be during his
agency and referring to a transaction within the scope
of said agency. Shotliff v. Modern Woodmen of Amer-
ica, 100 Mo. App. 152; Hilburn v. Insurance Co., 140
Mo. App. 368; Thompson v. Traders Ins. Co., 169 Mo.
24. The instruction is further erroneous in that it as-
sumes in the latter part thereof that the company is-
sued the policy with knowledge of the physical condi-
tion of the insured with reference to hemorrhages or
pulmonary diseases. And the last part thereof which
reads that "it thereby waives the defense of said an-
answer being true" is vague and meaningless, and only
confused the jury, as nothing was said in that instruc-
tion or any previous instruction about any answer
having been given. (8) The court erred in giving in-
struction No. —, at the request of plaintiff. Said in-
struction is a comment upon the evidence and should
not have been given as no witness was impeached by
evidence of his bad character for truth or veracity, or
by showing that he had made statements out of court
inconsistent with his evidence. Bank v. Maxey, 62 Mo.
74; Flynn v. Transit Co., 113 Mo. App. 185, 197; State
v. Bischler, 103 Mo. 203, 210-211. (9) The verdict of
the jury is not responsive to the instructions of the
court and is excessive. The jury were instructed to
allow interest on both counts of the petition, commenc-
ing with the 10th of September, 1909, but in their ver-

dict allowed the plaintiff interest from the 24th day of July, 1909. (10) The allowance of attorney's fees in this case was excessive. In any event, there should have been no allowance of attorney's fees on the second .count of the petition, as there was no evidence whatever of the services performed by the attorney for plaintiff in that behalf, his only statement being that the services rendered under the second count would be reasonably worth $50.

*S. C. Rogers* for respondent.

(1) Under the facts and circumstances in this case it cannot be disputed but that the judgment is for the right party. The court should not have permitted appellant to introduce in evidence the application, because it was not attached to the policy as required by the laws of Missouri and the laws of New York. Sec.. 6978, R. S. 1909; Coscarella v. Met. Life Ins. Co., 175 Mo. App. 130; Con. Laws of N. Y., vol. 3, p. 1714, sec. 58; Herb v. Kittaning Ins. Co., 138 Pa. 175, 180; Mutual Life Ins. Co. v. Dingley, etc., 49 L. R. A. 132, 138; 100 Fed. 408; Becker v. Colonial Life Ins. Co., 153 A. D. (N. Y.) 382; Coscarella v. Metropolitan Life Ins. Co., 175 Mo. App. 130, 139; Jones v. Prudential Ins. Co., 173 Mo. App. 17; Buchholz v. Metropolitan Life Ins. Co., 177 Mo. App. 692-3; S. C. 138, N. Y. Supp. 491; Murphy v. Col. Life Ins. Co., 83 Misc. 475; Morris v. Life Ass. Co., 183 Pa. 563, 573; Marcus v. Heralds of Liberty, 241 Pa. 431; Paulhamus v. Security Life Assn., 163 Fed. 554; Ellis v. Met. Life Ins. Co., 228 Pa. 230; Keller v. Home Life Ins. Co., 198 Mo. 460. The court could as a matter of law declare appellant's liability. Manning v. Ins. Co., 176 Mo. App. 678, 689. The court did not err in admitting the New York laws requiring the application to be endorsed upon or attached to the policy when issued. Connors v. Life Annuity Association, 171 Mo. App. 364, 369; Haven

v. Home Ins. Co., 149 Mo. App. 291, 294; Lange v. New York Life Ins. Co., 254 Mo. 488, 503; Craven v. New York Life Ins. Co., 148 Mo. 583, 607. Amended application not part of contract if issued after the policy of insurance. 19 Cyc. 602; Michigan F. & M. Ins. Co. v. Wich, 8 Colo. App. 409; 46 Pac. 687. (2) The court did not err in refusing to permit Dr. Haase to answer the questions referred to in appellant's brief under Points and Authorities, point 2. Sec. 6354, R. S. 1909; Taylor v. George, 176 Mo. App. 215; Bone v. Friday, 180 Mo. App. 577. The medical examiner is the agent of the company. Coolidge v. Charter Oak Life Ins. Co., 1 Mo. App. 109, 113. (3) It was not error for the court to allow plaintiff to testify that Pumpelley, the soliciting agent who was dead, had told plaintiff that assured was an unsafe risk and he had been instructed to change the policy from a twenty-year life to a twenty-year endowment. Sec. 6354, R. S. 1909. The testimony admitted over objection was with reference to a collateral matter, and was but carrying out the instruction of appellant company. It was cumulative only and harmless. Stahlman v. United Railways Company, 166 S. W. 312; Drew v. Railroad, 129 Mo. App. 459, 466; Sang v. City of St. Louis, 171 S. W. 347, 350; Birdsall v. Coon, 157 Mo. App. 439. (4) The assignment of error in appellant's brief, point 4, is not well taken. Any statement assured may have made in the application was a representation and not a warranty. Sec. 6937, R. S. 1909; Connor v. Life & Annuity Ass'n, 171 Mo. App. 364, 369; Coscarella v. Metropolitan Life Ins. Co., 175 Mo. App. 130. Evidence was admitted and properly so, showing that the examining physician, who was the agent of appellant, was informed as to her exact condition. Schwartz v. Royal Neighbors of America, 108 Pac. 51; 25 Cyc. 933. As to this evidence and this question, it was properly submitted to the jury as has been done in identical cases many times before and

approved. Roedel v. Jno. Hancock Mutual Life Ins. Co., 176 Mo. App. 584; Keller v. Home Life Ins. Co., 198 Mo. 440; Birdsall v. Coon, 157 Mo. App. 439; Wallace v. Prudential Ins. Co., 174 Mo. App. 110, 117-8-9; Tait v. Locke, 130 Mo. App. 273, 283. (5) Answering appellant's point 5, of its brief, we desire to say the court did not err in modifying the instructions requested by defendant. This was one of the defenses on the part of respondent to appellant's affirmative defense and it would have been error to have omitted it. Scarritt Estate v. Casualty Company of America, 166 Mo. App. 570; Shotliff v. Modern Woodmen of America, 100 Mo. App. 138, 152; Nichols v. Insurance Co., 170 Mo. App. 437, 449; Jones v. Prudential Insurance Co., 173 Mo. App. 12; Manning v. Connecticut Mutual Fire Ins. Co., 176 Mo. App. 678; Floyd v. Modern Woodmen of America, 166 Mo. App. 166; Burnham v. Insurance Company, 63 Mo. App. 85. The instructions offered by appellant are very liberal and are the same as were given in the cases of—Buchholz v. Metropolitan Life Ins. Co., 177 Mo. App. 683; Salts v. Prudential Ins. Co., 140 Mo. App. 142—and the addition thereto by the court of the question of waiver was correct. Hilburn v. Phoenix Ins. Co., 140 Mo. App. 355; Keller v. Home Life Ins. Co., 198 Mo. 440. (6) Referring to appellant's point 6 of its brief, it was not error on the part of the court to have refused defendant's instruction. The instruction offered by appellant is not the law. The court correctly declared the law in the instruction given. Keller v. Home Life Ins. Co., 198 Mo. 440. (7) Answering appellant's point 7, the court did not err in giving this instruction on the question of agency. A person who writes the application or solicits the insurance is the agent of the insurance company and not of the assured. Sec. 6938, R. S. 1909. That he is such agent and that his knowledge is the knowledge of the company, has repeatedly been so held in this State and elsewhere. Mal-

len v. Life Association, 168 Mo. App. 503; Scarritt Estate v. Casualty Company of America, 166 Mo. App. 567; Hilburn v. Phoenix Insurance Co., 140 Mo. App. 355; Simmons v. Modern Woodmen of America, 172 S. W. 492; Manning v. Connecticut Mutual Fire Ins. Co., 176 Mo. App. 687; Herndon v. Triple Alliance, 45 Mo. App. 426; United Zinc Co. v. General Accident Assurance Corporation Limited, 144 Mo. App. 380; City of DeSoto v. American Guaranty Fire Ins. Co., 102 Mo. App. 1.; Ritchey v. Home Insurance Co., 104 Mo. App. 146; 25 Cyc. 803; McGurk v. Metropolitan Life Ins. Co., 1 L. R. A. 563; Lynch v. Prud. Ins. Co., 150 Mo. App. 461, 468-9; Salts v. Prud. Ins. Co., 140 Mo. App. 150. And this instruction correctly declared the law. Wooldridge v. German Ins. Co., 69 Mo. App. 413; Coolidge v. Charter Oak Life Ins. Co., 1 Mo. App. 109; Shotliff v. Modern Woodmen of America, 100 Mo. App. 138. (8) As to appellant's point 8, this was an instruction on the credibility of witnesses, and the principle of law with reference to it is so elementary that it requires no citation of authorities. A cursory examination of the authorities cited by appellant herein will corroborate our statement. (9) Answering appellant's point 9, if this court is of the opinion too much interest was allowed respondent it can easily be computed and remitted. Reading v. Railroad, 173 S. W. 451. (10) Answering appellant's point 10, it seems that if appellant desired to contest the value of attorney's fee, it should have introduced evidence to combat the value placed on the services by the one witness testifying. Dodt v. Prud. Ins. Co., 171 S. W. 655; Coscarella v. Met. L. Ins. Co., 175 Mo. App. 139; Buchholz v. Met. L. Ins. Co., 177 Mo. App. 692. (11) The case should not be reversed unless the errors pointed out by appellant affect the merits of the action and are sufficient to induce a different result upon a re-trial. Sec. 2082, R. S. 1909; Orthwein v. Germania

Life Ins. Co., 170 S. W. 885, 888; Jones v. Prudential Ins. Co., 173 Mo. App. 17.

REYNOLDS, P. J.—Action on two policies of insurance, one a twenty-year endowment policy for $500, dated July 24, 1908, the other an industrial policy for $75, the policy dated July 6, 1908. Both policies were in favor of plaintiff, respondent here, and issued on the life of his wife, it being averred that the company issuing the policies was organized and existing under and by virtue of the laws of the State of New York and authorized to transact business in this State as a life insurance company. It is averred that after the issue of the policy on July 24, 1908, by agreement between the parties, on August 5, 1908, the policy was so modified and changed by defendant that the premiums were changed from semiannual payments of $11.65 to annual payments of $22.41. Besides the demand for judgment for the amount of these policies, the petition claims damages for vexatious delay and for attorney's fee, interest and costs.

The answer, admitting that defendant is a corporation, organized under and by virtue of the laws of the State of New York but authorized to transact business of life insurance in the State of Missouri, admits the execution and delivery of the policy, admits the death of the insured, and that at the time of her death all the premiums had been paid, but denies all the other allegations in the petition. The answer then sets up that about July 1, 1908, at the city of St. Louis, Missouri, the insured made her certain application in writing, wherein she requested and solicited defendant to issue to her and upon her life, the contract of life insurance evidenced by the $500 policy, and that in and by this application it was agreed, that inasmuch as only the officers at the home office of the company in the city of New York have authority to determine whether or not a policy shall issue upon such appli-

Schuler v. Met. Life Insurance Co.

cation and as they act on written statements, answers, and agreements therein made, that no statement, promises or information made or given by or to any person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company, unless such statements, promises or information be reduced to writing and presented to the officers of the company at the home office; and it is averred that the insured stated and represented to defendant, and for the purpose of inducing defendant to issue the policy, that she had never suffered from hemorrhages or any other pulmonary disease or diseases of the lungs, and thereby expressly agreed that in the event the policy was so issued it should have no force or effect, but should be void, if she had ever had such diseases or any of them, or if at the time of its issuance, she was not in sound health; that in accordance with and in pursuance of said application and in reliance upon these statements, and believing them to be true, the defendant company had executed and delivered this policy. But it is averred that at the time of the execution and delivery of the application and for some time prior thereto, the insured had suffered from hemorrhages of the lungs and pulmonary tuberculosis, and that by reason thereof at the time of the issuance and delivery of the policy, she was not in sound health; that said facts as to the condition of her health were at the time unknown to defendant, and did not become known to defendant until after the death of the insured, but that defendant, relying upon the statements contained in the application and believing them to be true, and being deceived thereby, was led and induced to issue this $500 policy, which it would not have done had it known the true condition of the health of the insured; that the insured continued to suffer from hemorrhages of the lungs and pulmonary tuberculosis up and until the time of her death, and that these diseases contributed to and ac-

tually caused her death, wherefore it is averred that by reason of the conditions of the application and premises, the contract was from its inception, void and of no effect; and that as soon as the fact of the existence of these diseases became known to defendant, it gave due notice that it repudiated and refused to be bound by the contract and offered to return to the proper representatives of the insured, the premiums paid on the policy, bringing the amount of these premiums into court to be awarded to whoever the court should determine.

The answer to the second count of the petition, which was on the $75 policy, sets out in substance that it was agreed in said policy that it should be void if the insured, before its date, had suffered from any pulmonary disease, or any disease of the lungs; that its terms could not be changed, or its conditions varied, except by written agreement signed by the president or secretary of the company, and that agents, including superintendents and assistant superintendents, are not authorized and have no power to make, alter or discharge contracts or waive forfeitures. This answer then follows the line of that to the first count as to the insured having had pulmonary consumption, diseases of the lungs, of which she died—the defendant ignorant of her diseased condition until after her death. Tender of the premiums is also averred, it being claimed that by reason of these premises the policy is void.

After a general denial of the new matter, plaintiff, replying to the answer to the first count of the petition, pleads section 58, page 1714, volume 3, Con. Laws of the State of New York, hereafter to be noticed, requiring the application to be indorsed and attached to the policy, averring that this statute was in force at the time of the issuance of this policy, and that when it was issued neither the application nor the substance thereof was indorsed on the policy. In further

reply. it is averred that defendant, by its agents, so-
licited and procured the insured to take out the policy.
and made its own examination, through its agents, of
the physical condition of the insured at the time of the
issue of its policy; knew her condition; asked its own
questions as to her physical condition; reduced her an-
swers to writing for and on behalf of itself; knew the
insured's condition and took and assumed all risks of
insured and made its own application to the company
and induced and procured the same of its own volition
and request, and in all matters acted, in taking the
application of the insured and making the examina-
tion of her condition and in issuing the policy, as the
agent of the insurer, "and not of plaintiff" (sic), and
that if, as a matter of fact, "plaintiff" (sic) was not
in good health at the time the insurance was effected,
or suffered from any disease, as set up in the answer,
the defendant, its agents and solicitors knew the facts
at the time and knew the full condition of the deceased,
and knowing the same, waived all the provisions and
requirements as to health and condition of the de-
ceased, and issued the policy, and should be estopped
from now setting up the facts pleaded by it.

This was substantially repeated in reply to the
second cause of action.

It was in evidence that the amount of the premi-
ums paid by the insured under the policies in suit had
been paid into court.

The cause was tried before the court and a jury
and resulted in a verdict against defendant in the sum
of $847.75, that verdict made up of $500 on the one
policy, $107 interest on that from July 24, 1909, $100
attorney's fee, but nothing for damages for vexatious
refusal to pay, making a total of $707 on the first count;
and on the second count, or industrial policy, the ver-
dict was for $75 for the face of the policy, $15.75 for
interest from July 24, 1909, $50 attorney's fee, but

191M.A.5

nothing for vexatious refusal to pay, a total of $140.75 on this industrial policy. Judgment followed. Defendant interposing a motion for new trial and excepting to that motion being overruled, has duly perfected its appeal to this court.

The learned counsel for respondent very strenuously argues that under the New York law referred to, as well as under section 6978 of our Revised Statutes 1909, the court should not have permitted appellant to have introduced in evidence the application, and that with this evidence eliminated, and the errors assigned by appellant over this, the judgment should be affirmed. Counsel for appellant, however, contends that there was error in admitting in evidence the New York law and that this being a Missouri contract it is to be interpreted and determined by our laws. We think the contention that these policies are to be treated as Missouri contracts is correct. These policies were negotiated in Missouri, with Missouri citizens and residents, delivered here, and the premiums collected here.

Our Supreme Court held in Cravens v. New York Life Ins. Co., 148 Mo. 583, l. c. 599, 50 S. W. 519, that although the contract provides that it should be construed according to the laws of the State of New York, and that the place of the contract was agreed to be the home office of the company in the city of New York, that nevertheless it was a Missouri contract. This was reiterated in Horton v. New York Life Ins. Co., 151 Mo. 604, l. c. 616, 52 S. W. 356. It was repeated and authorities cited by the Kansas City Court of Appeals in Whittaker v. Mutual Life Insurance Company of New York, 133 Mo. App. 664, l. c. 668, 114 S. W. 53, and by the Springfield Court of Appeals in Haven v. The Home Insurance Co., 149 Mo. App. 291, l. c. 294, 130 S. W. 73. To quote Judge JOHNSON in the Whittaker case, supra (l. c. 668), "That the policy must be regarded as a Missouri contract subject to the

insurance laws of this State, is not a debatable proposition."

The New York law requires that every policy issued and delivered within that State on and after January 1, 1907, "shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any . . . application or other writings unless the same are indorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties. Any waiver of the provisions of this section shall be void."

We have a very similar provision in section 6978 of our Revised Statutes of 1909, in article IV, chapter 61, as follows:

"Every corporation, company or association transacting business under the provisions of this article shall, upon the issuance of every policy, attach to such policy or indorse thereon the substance of the application upon which such policy was issued, and which is made a part of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy."

This section first appeared as section 7929, Revised Statutes 1899. It applies to this defendant, which is a corporation conducting business in our State, although organized under the laws of the State of New York. Doing business here, making contracts here, our laws enter into its contracts made here. [Cravens v. New York Life Ins. Co., supra.]

While it was error to admit the New York law in evidence, it was immaterial error. We cannot say that its admission was prejudicial. The court admitted it "subject to objection" and did not afterwards pass upon it, and certainly did not instruct on it.

Construing this New York statute, which it will be seen very closely follows our own, it has been held

that a failure to attach that part of the application covering the examination of the physician to the policy, shut out defenses based upon misstatements in connection with the medical examination. [Becker v. Colonial Life Ins. Co., 138 N. Y. Supp. 491.]

In New York Life Ins. Co. v. Fletcher, 117 U. S. 519, Mr. Justice FIELD, speaking for the Supreme Court of the United States and commenting on the effect of the clause in the application and in the policy, that no statements, representations or information made or given by or to the person soliciting or taking the application, or to any person, shall be binding upon the company or in any manner affect its rights unless such statements, etc., be reduced to writing and presented to the officers of the company at the home office of the company, held (1. c. 534) that having the copy of the application, which was attached to his policy, before him, the insured "would have discovered by inspection that a fraud had been perpetrated, not only upon himself but upon the company, and it would have been his duty to have made the fact known to the company. He could not hold the policy without approving the action of the agents and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements."

So the reason for this section 6978 of our statute appears; it does afford a material safeguard for the insured in giving him an opportunity, after the policy has been delivered, to examine it and correct any misstatements which may be found in the policy itself or in the application. When the insurance company fails to follow out this statutory provisions, it should not be permitted, on being brought into court, for the first time to confront the plaintiff or claimant with such a very material matter as is here claimed to be a part, of the very essence of the contract, namely the application and its accompanying certificate; should

not be allowed to hold the insured to a knowledge of all · that was in the paper which had been kept from him from the time of its execution until brought forward by defendant to defeat the action. We all know, courts as well as people generally, that applicants for insurance sign such papers without careful scrutiny. It was to guard against such traps for the unwary that our statute was enacted. Here the evidence is that neither the insured nor her husband were ever furnished with a copy of the application nor its substance, meaning by the application the personal one and its accompanying physician's certificate. [See Becker v. Colonial Life Ins. Co., supra.] And when the attorney for plaintiff, sometime after the institution of this action, demanded a copy, he was not shown the application until some six or eight months after that demand. Fair treatment demanded more than this, and the absence of a copy of the application or of its substance from the policy itself, and in the light of the requirement· of section 6978, that application, and its accompanying certificate, should have been excluded from the jury so far as concerns the first count of the petition.

But it is argued that this section of our statute carries with it no specific penalty. The answer is, that the statute requires the thing to be done. One cannot, failing to obey the law, claim any right founded on that disobedience. By failing to attach the policy or its substance, defendant, under the law, lost whatever benefit it might seek under the application. The converse of the proposition here presented came before us in Coscarella v. Metropolitan Life Insurance Co., 175 Mo. App. 130, 157 S. W. 873. There it was held that the failure of this same defendant, defendant there, to attach the application or its substance to the policy, as required by section 6978, could not deprive the plaintiff of the benefit of the statements of the medical examiner of the defendant, attached to the application, and that those statements could be used against the de-

fendant by the plaintiff in making out his claim. We are not holding that the failure to attach the application or its substance to the policy nullifies the policy. What we do hold is that this absence bars defendant from using it against plaintiff. It follows that when plaintiff introduced the policy, its execution admitted, payment of premiums admitted, the death of the insured admitted, and plaintiff being the beneficiary, that defendant should not have been permitted to introduce the application and its certificates to sustain its defense of misrepresentations. As, notwithstanding this evidence of the defendant, plaintiff recovered, this error does not affect the verdict and judgment on this first count, if there were no other errors.

Turning to the evidence in the case relevant to the second count, as to misrepresentations as to the condition of health of the insured, and it may be said that this also covers the facts involved in the first count and the statements in the application, there was evidence tending to show that the husband of the insured had told the physician who examined her for the company, at the time when he was making the examination, that the insured had been afflicted with pulmonary tuberculosis, of which disease she died, and that this physician had also then been given the name of the physician who attended her for that disease; in brief, that defendant issued both policies with knowledge, on the part of its agents, of her condition. This was in direct contradiction to the answers as taken down by the physician. The weight to be given to this was for the jury. They were properly instructed on the law applicable and their verdict concludes us on both counts.

Without going into the instructions in detail, it is sufficient to say of them that we think they properly presented the issue to the jury in the most favorable light that the defendant was entitled to have. At the close of the case defendant interposed a demurrer and

now contends that there should have been a directed verdict for the defendant. That is untenable. Learned counsel also contends that the verdict is against the weight of the evidence. But the weight of the evidence is for the consideration of the trial court, not of the appellate tribunal.

It is very strongly argued by the learned counsel for appellant that the court refused to allow it to take up that part of the application, the questions in which had been asked by Dr. Haase, the examining physician for the company, and to ask him to state to the jury whether or not he had asked each particular question and the insured had made the answer as written down in the application. The court declined to permit this. Having allowed Dr. Haase to testify in general that the application before him was the one which he had before him when he visited the insured, and that he had asked her the questions and written down the answers as they appeared there, this application was introduced in evidence. All of this contention fails when we hold, as here, that the application, of which this was a part, should not have been admitted in evidence for the defendant, it not having been attached to the policy. It is not out of place, however, to say, that having this general answer, which covers the whole application and all the questions and answers in it in evidence, it was within the sound discretion of the court to say whether it would permit counsel to take up each question and answer in detail and put them to the witnesses. We see no error in refusing to allow this.

Error is assigned to the allowance of testimony as to conversation between a soliciting agent of the defendant, now dead, and the husband of the insured, plaintiff here, that agent, it was claimed, having said that he considered the insured an unsafe risk and had asked plaintiff to have the policy changed from a twenty-year endowment, which was the form of policy

ultimately written. As we have held in Carroll v. United Rys. Co., 157 Mo. App. 247, 137 S. W. 303, conversation with the agent and a party to the transaction and another party to that transaction or contract and cause of action, that agent being dead, is not admissible. But this evidence was merely cumulative. There was other evidence that established this fact, testified to beyond question, and we do not think that the admission of it in the very casual way in which it came in, is reversible error. [Floyd v. Prudential Ins. Co., 72 Mo. App. 455, 1. c. 460.]

It is claimed that the insured is bound by her statements in the application, in the absence of showing fraud or deceit on the part of the agent writing the application, and there being no allegation in the reply that the application was procured by fraud, that it was error for the court to allow witnesses to testify to what they had told the examining physician. This assignment falls under our ruling that the application should not have been admitted in evidence.

The action of the court in modifying the instructions asked by defendant and which were then given with the modification, is also assigned for error. We are not advised by the bill of exceptions what the modification was. Gathering this, however, from the briefs of counsel, we are to presume that it was adding to the requested instructions asked by defendant the words "that the verdict should be for plaintiff unless they [the jury] found under the instructions in the case that the defendant waived the truth of the representations made by the insured." We find no exception to the alteration of any instructions but there is exception to the instructions as given by the court, and in the instructions as given by the court this clause appears, after saying that under all the circumstances the jury should find for defendant, "unless you find under the instructions in this case that the defendant waived the defense of

the truth of said representations.'' With this addition there was no error in these instructions, if this was an addition. There was no error in the instructions which the court gave of its own motion, in fact they were very favorable to defendant and would have been erroneous if, as they purported to cover the whole case, they had not been followed by this cautionary proviso.

Exception is also taken to the action of the court in refusing an instruction defining ''vexatious delay,'' that instruction as asked being ''that by the term ''vexatious delay,' as used in these instructions is meant action not taken in good faith and with probable cause but rather in an effort to embarrass or annoy.'' We do not say that this instruction would have been error if given. It is true that the term ''vexatious'' is, in a way, a technical term, but it is also a term of very common use. We think it was sufficiently defined to the jury here by the court when it told the jury, in instructing as to the amount of the verdict, that if the jury should find ''from all the facts and circumstances shown by the evidence that this refusal to pay was vexatious, that is, without reasonable cause, then you may allow'' plaintiff, in addition to the amount of the policy referred to, interest and a reasonable attorney's fee. We think this sufficiently defined and intelligently put to the jury the meaning of the word ''vexatious.'' With that in the instructions on both the first and second counts, we see no error in the refusal of the instruction as asked by defendant on that point.

Error is assigned to an instruction given at the instance of plaintiff, to the effect that if they found from the evidence that the insured or any one for her ''made known to an agent or superintendent or examining physician of defendant company the facts relative to her physical condition with reference to hemorrhages or pulmonary disease and of her confinement and treatment therefor, or if such agent, superintendent or examining physician knew such facts, then

his knowledge is the knowledge of the defendant company *and if said company with said knowledge* issued and delivered the policy sued on in the first count of plaintiff's petition, it thereby waived the defense of said answer being true and your verdict should be for plaintiff on the first count of his petition." The words underscored are the ones particularly objected to, it being claimed that knowledge to every agent of the corporation is not legal knowledge to the corporation. With the application in evidence and against the conclusiveness of which as against plaintiff, this instruction was levelled, we do not think that it is subject to this interpretation. The agents to whom the facts concerning the physical condition of the insured are shown by the evidence to have been known, were the examining physician, who here was the agent of the insurer (Floyd v. Modern Woodmen of America, 166 Mo. App. 166, 148 S. W. 178), and sent by defendant, and the assistant manager or superintendent at St. Louis. So that the jury, in applying this instruction to the evidence in the case, must have fully understood that it referred to the knowledge of these particular officers and that it did not give them a roving commission to inquire into the possibility of some other agent knowing it. That is not the sense nor the fair meaning of this instruction and we see no error in it.

The knowledge of the local agents who negotiated the contract is the knowledge of the company. [Manning v. Connecticut Fire Ins. Co., 176 Mo. App. 678, l. c. 689 and cases there cited, 159 S. W. 750.] And this is so even in the face of a contrary provision in the application or policy. [James v. Mutual Reserve Fund Life Assn., 148 Mo. 1, l. c. 10, 49 S. W. 978.]

The court gave the instruction usual in so many cases as to the credibility of witnesses. The form of that instruction is not objected to, but it is urged that it is a comment upon the evidence and should not have been given as no witness was impeached by evidence

of his bad character for truth or veracity, or by showing that he had made statements out of court inconsistent with his evidence. We do not understand that instructions of this kind are limited to cases of impeachment or where impeachment occurs. There was a very sharp conflict in the evidence here on very material matters connected with it. As for instance, the examining physician testified most positively to a certain fact and witnesses for plaintiff directly contradicted him. This, too, on a very material fact, and under the evidence in the case we cannot see that this instruction was improper.

Finally, it is urged that the verdict is not responsive to the issues and is excessive and that the allowance of attorney's fee was excessive.

Taking up the latter proposition, the attorney testified to the value of his services. It is true he did not set those services out in detail, but he did testify that in his opinion they were worth from $100 to $200 in one case and $50 in the other. It was open to defendant to develop by cross-examination the nature and extent of those services. Having an opportunity to do so and not availing itself of it, it cannot now complain.

It does appear that in casting up the interest in this case on the sums represented in the two policies, the jury fell into an error, calculating interest from July 24, 1909. This is error. The court instructed the jury that if plaintiff recovered he was entitled to the amounts of the policies with interest on those amounts at six per cent per annum from the 10th of September, 1909. So there is an excess of interest of $4.39. Other than this, we find no reversible error. If, therefore, plaintiff will remit this sum of $4.39 within thirty days, the judgment of the circuit court will be affirmed. Otherwise the judgment will be reversed and the cause remanded. *Nortoni* and *Allen, JJ.,* concur.