ROSENBLOOM et al. v. NEW YORK
LIFE INS. CO.

No. 3698.

District Court, W. D. Missouri, W. D.

May 8, 1946.

Philip L. Levi and Solbert M. Wasserstrom, both of Kansas City, Mo., for plaintiffs.

Richard S. Righter and Howard A. Crawford, both of Kansas City, Mo., for defendant.

RIDGE, District Judge.

Both parties have filed motions for summary judgment under Rule 56, F.R.C.P., 28 U.S.C.A. following section 723c. The sup-

porting affidavits filed with each of said motions reveal no essential facts, for a determination of the issues here involved, to be in dispute.

The action is in two counts. In the first count plaintiffs seek to obtain specific performance of a certain annuity contract issued by defendant to Jay R. Rosenbloom, and to compel defendant to issue a policy of insurance on the ordinary life plan, with death benefits of $7,151, upon the life of Jay R. Rosenbloom, without a war clause contained therein. In the second count plaintiffs seek to collect the amount of the death benefits under said ordinary life policy, together with damages for vexatious delay, by defendant, in refusing to pay said claim and for attorney's fees.

On December 22, 1938, defendant issued to Jay R. Rosenbloom, who was then 13 years of age, an annuity policy. The policy provided:

"This policy is free of conditions as to residence, travel, occupation, and military or naval service."

" * * * The annuitant may exchange this Policy for a Policy on the Ordinary Life, Limited Payment Life or Endowment plan of insurance, issued by the Company at the time this Policy takes effect, at a total premium as high as that charged under this Policy, but not more than twenty per cent in excess thereof, upon presentation at the Home Office of evidence of insurability satisfactory to the Company. The exchange shall be effective upon surrender of this Policy and the payment to the Company of the difference in premiums with compound interest at the rate of six per cent per annum from the due date of each premium to the date of exchange; allowance will be made for any larger dividends, on the new plan. The new Policy will take effect as of the effective date of this Policy and the premium will be at the rate which would have been charged if this Policy had been issued originally on the new plan."

At the time said annuity policy was issued in 1938, no war clause was then inserted in any of the policies then being issued by defendant; on the contrary, at that particular time all of the policies then issued by defendant specifically provided that they were "free of conditions as to military or naval service." The negotiations for the annuity policy in question were carried on by Mr. Joe W. Rosenbloom, the father of Jay R. Rosenbloom, with one Mr. Abe Rogell, a soliciting agent for defendant. Late in 1943 Mr. Joe W. Rosenbloom told Mr. Rogell, who was still acting as a soliciting agent for defendant, that "Jay" (the annuitant) wanted to exchange his annuity policy for an ordinary life policy, carrying the largest possible amount of death benefits, and that he (Jay) wanted his father named as beneficiary. Jay Rosenbloom was then 17 years of age and would be 18 on June 19, 1944, and subject to Selective Service in the armed forces of his country. When Mr. Joe W. Rosenbloom contacted defendant's soliciting agent, Mr. Rogell, he (Rogell) stated "that he would transmit our request to the proper officers of the New York Life Insurance Company." Thereafter Mr. Rogell requested one Mr. T. R. Naughton, the General Correspondence Clerk at the Company's Kansas City Branch Office, whose duty it was to handle all general correspondence with the home office of defendant, to write the home office for figures for four conversion plans of life insurance into which Jay's annuity policy might be converted, and to inquire of the home office whether such converted policies would contain a war clause. This Mr. Naughton did. In reply, on January 17, 1944, the home office of defendant sent certain memoranda to Mr. Naughton, giving figures for conversion of said annuity policy into any one of four plans of life insurance and stated, on each of said forms, that the converted policy would contain a war and aviation clause. On receipt of said home office communications Mr. Naughton delivered them to Mr. Rogell. Mr. Rogell, in turn, delivered them to Mr. Joe W. Rosenbloom. Mr. Joe W. Rosenbloom examined said memoranda and he and "Jay" selected the one based upon the ordinary life plan of insurance, with death benefits in the sum of $7,151. After so doing Mr. Joe W. Rosenbloom again contacted Mr. Rogell and told him that he and his son Jay had decided on the ordinary life plan with the above death benefits and "that they

would comply with all the requirements indicated on the Company's memoranda and that the money adjustments were satisfactory; however, I also told him emphatically that we would not agree to the insertion of a war clause" in the converted policy. Mr. Rogell then stated to Mr. Joe W. Rosenbloom that he would take up the matter again with the Company. About March 1, 1944 Mr. Rogell again asked Mr. Naughton to inquire of the home office of defendant whether the Company would insist on the inclusion of a war clause in said converted policies. In answer thereto Mr. Rogell received the following communication which he, in turn, delivered to Mr. Joe Rosenbloom:

"Mr. Abe Rogell
"T. P. Naughton, For
   Cashier.
"TPN:OMR

"March 1, 1944
Pol. #214 095 & #214 120
Rosenbloom

"We return herewith the outlines of the different changes in connection with the above numbered Retirement Annuity contracts, as the Home Office has reiterated that any change in connection with these retirement annuity contracts to a form of permanent life insurance must contain the Company's present War and Aviation Clause.

"We regret that we have no better word for you."

Mr. Joe W. Rosenbloom again repeated, to Mr. Rogell, that "Jay was willing to undergo a medical examination, to submit reports and forms required by the company, and to submit the annuity policy for cancellation, provided the Company would issue the $7,151 ordinary life policy, without a war clause." There matters rested until Jay R. Rosenbloom enlisted in the United States Merchant Marine and United States Naval Reserve. In December 1944, while Jay R. Rosenbloom was in active service and outside the United States, Mr. Joe W. Rosenbloom paid the annual premium falling due on the life annuity policy of Jay's, so as to keep it in force until Jay's return. On April 9, 1945, Jay R. Rosenbloom was killed in a ship explosion at Beri, Italy, while in the service of "his country at its time of greatest need." On June 18, 1945, demand was made on

defendant for payment of the amount of the ordinary life policy that Jay and Mr. Joe W. Rosenbloom selected for exchange for the annuity policy originally issued to Jay by defendant. On July 17, 1945, defendant, replying to said demand, denied liability on the ground that the annuitant in said policy "did not comply wtlh the terms, provisions and conditions of said annuity relating to change of other plans of insurance."

In the view we now take of this matter a decision on the motions for summary judgment depends on the determination of one issue only, to-wit: Did defendant under the terms of the annuity contract issued by defendant to Jay R. Rosenbloom have the right to insist upon the inclusion of a war clause in any life insurance policy which it might issue pursuant to the conversion privilege contained therein?

Plaintiffs contend that by the terms of the conversion privilege contained in said annuity policy, and the admitted fact that defendant did not insert a war clause in any of the policies of insurance issued by it at the time said policy became effective, the defendant was obligated to issue to annuitant a life insurance policy in exchange for said annuity policy, without a war clause contained therein. Such contention requires the construction of the conversion provision contained in said annuity policy, in the light of the circumstances surrounding the parties at the time said annuity policy was issued. In other words, we must determine, from the policy itself, what the contract was between the parties. If we can give effect to their agreement from the terms expressed therein we perform our judicial duty for neither party contends that the language of the contract is ambiguous.

The annuity policy issued to Jay R. Rosenbloom, by defendant, is a Missouri contract. Liebing v. Mutual Life Insurance Company of New York, Mo.Sup., 226 S.W. 897, judgment affirmed Mutual Life Insurance Company of New York v. Liebing, 259 U.S. 209, 42 S. Ct. 467, 66 L.Ed. 900; Schuler v. Metropolitan Life Insurance Company, 191 Mo.App. 52, 176 S.W. 274. Consequently the rights and

liabilities of the parties herein must be determined according to the law of Missouri.

■ An annuity contract is not a policy of life insurance. State ex rel. Aetna Life Insurance Company v. Lucas, 348 Mo. 286, 153 S.W.2d 10–12; 29 Amer.Jur. p. 52, Sec. 6. The risk assumed in an annuity contract is to pay to the annuitant an annuity so long as he lives, while the risk assumed in a life insurance contract is to pay upon insured's death. Equitable Life Assurance Society of the United States v. Johnson, 53 Cal.App.2d 49, 127 P.2d 95, 99. In Carroll v. Equitable Life Assurance Society of the United States, D.C.Mo., 9 F.Supp. 223, 224 it is said: "the granting of annuity contracts is in the nature of an investment and has very little to do with mortality tables. The only case where a mortality table would be involved is where an annuity is granted for the life of an individual. In such case, the grantor would, of course, take into consideration the 'expectancy' of such person under accepted mortality tables."

■ It is the law of Missouri that when an insured exercises the privilege given to him to exchange his policy for another policy, the new policy creates a new contract. National City Bank v. Missouri State Life Insurance Co., 332 Mo. 182, 57 S.W.2d 1066. Under the law of said state a reinstated policy also creates a new contract. State ex rel. Metropolitan Life Insurance Co. v. Shain, et al., Judges, 334 Mo. 385, 66 S.W.2d 871, 874; Jenkins v. Covenant Mut. Life Insurance Company, 171 Mo. 375, 71 S.W. 688, 690.

The policy defendant issued to Jay R. Rosenbloom in 1938 reveals itself to be a pure annuity contract. It was issued upon an application which chiefly considered only the age of the annuitant. The consideration therefor was represented in annual premium-units of $100. The annuity payments agreed to be paid were optional with the annuitant, beginning at age 50. The death benefits and cash surrender values provided for therein are shown to be based upon the number and amount of premium-units paid and not on ordinary life insurance tables. The longer the annuitant lived the greater the benefits and annuity became. The "insurability" of the annuitant, as commonly understood in the realm of life insurance, was not considered by defendant in the issuance of said policy, as revealed by the application made therefor. In said policy it was agreed that "the annuitant may exchange this Policy for a Policy on the Ordinary Life, Limited Payment Life or Endowment plan of insurance," such as was "issued by the Company at the time this policy takes effect, * * * upon presentation at the Home Office of evidence of insurability satisfactory to the Company." The exchange was to "be effective upon surrender of" the annuity policy, and it was agreed that the "new policy will take effect as of the effective date of" the annuity policy. Of course in said conversion of policies "the difference in premium with compound interest, at the rate of six per cent per annum from the due date of each premium to the date of exchange" was to be paid for the converted policy. Under said agreement the right of a conversion was a "policy for a policy" on a different *plan* of insurance upon "evidence of insurability satisfactory to the Company."

As above stated "insurability" of the annuitant was not taken into consideration by the defendant at the time said annuity policy was issued. Such fact compels a determination of what is meant by the term "insurability" as used in the above conversion clause. If "insurability" is a term of art then it would appear to be a delimitation of the right to the policy that defendant bound itself to issue on a different plan of insurance. Otherwise the phrase "issued by the Company at the time this policy takes effect" would appear to compel defendant to execute a converted policy containing the same terms and conditions as it authoritatively published and delivered at the time said annuity policy became effective. At that time it will be recalled defendant did not insert in any of its policies, under any plan of insurance, a war clause. If "insurability" delimits the right of annuitant to a converted policy, and a "war clause" is a factor reasonably to be considered in determining "insurability," then the question remains at what time "evidence of insurability" must

be considered; if at the time of conversion then defendant had the right to insist upon the insertion of a "war clause" in such converted policy. It is manifest from a reading of the above conversion clause that the "evidence of insurability satisfactory to the Company" was to be submitted by annuitant at the time he applied for a converted policy.

In the recent case of Kirby v. Prudential Life Insurance Co., Mo.App. Kansas City, 191 S.W.2d 379, 381, an Appellate Court of Missouri had occasion 'to consider the term "insurability" when used in connection with a "reinstatement clause" contained in a life insurance policy. In that action insured, after failing to pay his premium within the grace period, applied for reinstatement of his policy and tendered the full amount of the delinquent premium. The reinstatement clause contained in the policy there involved provided that if the "policy be lapsed for nonpayment of premium, it will be reinstated * * * upon written application and payment of arrears of premiums, * * * and provided evidence of insurability of the insured satisfactory to the Company be furnished." After insured filed his application for reinstatement the defendant therein required him to fill out and return an aviation questionnaire. The filled-in questionnaire revealed that insured was the operator of an airplane for pleasure. The company requested the insured to execute an instrument designated as "Limitation of Liability in event of death as the result of riding in aircraft," the same to become a part of the policy if and when it should be re-issued. The effect of such proposal was a limitation upon the coverage contained in the original policy. Insured refused to execute said instrument or agree to said limitation. Later he was killed while riding a motorcycle. In an action brought on the original policy it was conceded that at the time of making application for reinstatement the insured was in good health. The plaintiff there contended that "evidence of insurability" as contained in the reinstatement clause of the original policy meant evidence of good health and insurable inter-

est. The defendant contended that the insured was not insurable within the meaning of said clause, and that it was legally justified in declining to reinstate the policy. After ruling that the term "insurability" is broader than "good health and an insurable interest," the opinion in the Kirby case, supra, demonstrates the many factors taken into consideration by life insurance companies in determining "insurability"; such as change of occupation, engagement in aerial flights, military and naval service, marital status, etc. In concluding its opinion the Court said "we cannot say that the term insurability is ambiguous and is susceptible of two different interpretations, one of which is 'good health.' It is not thought that the man on the street would so construe the term. Probably most people know that to be insurable one must have good health; but they also know that good health is not the only factor about which insurance companies are concerned in the issuance of policies. They know that insurability means more than good health." From the opinion in the Kirby case, supra, and the authorities therein cited, it is manifest that the term "insurability" is a term of art when used in conjunction with life insurance. "Insurability" as a term of art signifies all those physical and moral factors reasonably taken into consideration by life insurance companies in determining coverage or matters affecting the risk.

In the case at bar it can be conceded .that the annuitant, at the time he sought to convert his annuity policy into a policy on the ordinary life plan of insurance, was in "good health." (Shortly thereafter he passed a naval officer's physical examination.) Plaintiffs contend that the "good health" of the annuitant being established, that was all the defendant could consider in determining annuitant's right to a converted policy because said annuity policy was "free of conditions as to residence, travel, occupation and military or naval service." Such contention cannot be sustained for several reasons: (1) The converted policy is considered to be a new contract under Missouri law; (2) there is no specific obligation in the

annuity contract that binds the parties to carry any of its terms and benefits into the converted contract on a different plan of insurance. Another contention which plaintiffs make is that under the conversion clause, contained in the annuity contract, the right of conversion was a "Policy for a Policy on the Ordinary Life, Limited Payment Life or Endowment plan of insurance, issued by the company at the time this policy takes effect"; that when such provision of the annuity policy is considered with the admitted fact that at the time said annuity policy did take effect the defendant did not insert in any of its policies then issued by it, on any of the above plans of insurance, a war clause, defendant was bound to eliminate any such clause in the converted policy. To so hold would be to disregard the term of art "insurability" as used in said conversion clause, and the obligation of the annuitant to submit evidence of that "insurability" at the time he applies for a conversion of his policies. The mandate of the condition precedent in said conversion clause is that the annuitant present to "the Home Office evidence of insurability satisfactory to the company," at the time conversion is applied for. The Court will take judicial notice that insurance companies do consider evidence of insurability before issuing a policy of insurance on the ordinary life plan. The last quoted phrase permitted defendant to consider any reasonable factor that is ordinarily considered by life insurance companies in determining insurability to its satisfaction, before issuing a policy on a converted plan of life insurance. It cannot be gainsaid in time of war that a "war clause" is such a reasonable factor. It must be remembered that at the time defendant issued said annuity policy it did not then consider the "insurability" of the annuitant as a life insurance risk. In the above conversion clause it reserved the right to do so if the annuitant sought to take advantage of the right of converting his annuity policy into a policy of insurance on the ordinary life plan. Had defendant, at the time conversion was sought by annuitant, ceased issuing policies of insurance on the plans enumerated in said conversion clause and the annuitant had submitted evidence of his "insurability" (no other legal bars intervening), annuitant could have compelled defendant to issue to him a policy on any of the enumerated plans of insurance written by the company at the time he purchased his annuity in 1938. Such is the legal obligation of defendant under the above conversion clause when it agreed to issue a "Policy for a Policy" issued by the company at the time this policy takes effect. Under that legal obligation plaintiffs cannot compel defendant to issue to annuitant a policy of life insurance in 1943, if annuitant does not present "evidence of insurability satisfactory to the company." A war risk clause affects the degree of risk assumed by an insurance company and not the plan upon which insurance benefits are computed. For defendant to take that factor of coverage into consideration in determining the insurability of the annuitant at the time he applied for conversion of his annuity policy, into a life insurance policy, was not a breach, by defendant, of any condition contained in said annuity policy. In the case at bar plaintiffs admit that "coverage is an important, if not the most important, factor of any plan of insurance."

Plaintiffs rely upon the case of Sussex v. Aetna Life Insurance Company, Ontario Supreme Court 1917, 33 Dom.Law Reports 549, a reinstatement case, in support of thier contention that defendant breached its annuity contract when defendant insisted upon the insertion of a "war clause" in the converted policy. In the Sussex case the insured applied for reinstatement of his policy after the premium grace period had expired. Between the time the original policy was issued and reinstatement applied for insured entered the Canadian Army in World War 1. The Company refused to reinstate the policy unless a war clause was inserted therein. The original policy of insurance contained no such limitation on coverage. The trial Court held that insured was entitled to have the policy reinstated upon the payment of the regular premium with interest from the date of lapse, the Court saying:

698

" * * * 'proof of insurability,' in condition 14, means that the insured, at the time of application for reinstatement, *is a proper risk for insurance upon the basis of the original contract,* and the condition of the health of the insured is the only matter to which I can think it could apply *in this case;* and, at all events, it is the only matter to which it did in fact apply, *upon the circumstances here.* If the policy had accepted the risk incident to warfare, the insured, having become a soldier, would not be eligible for insurance without the consent of the company, and so would lack the quality of 'insurability' and the right to reinstatement, *but the policy itself determines this point against the defendants."* (Italics supplied.)

In the Kirby case the Kansas City Court of Appeals distinguishes the ruling in the Sussex case, supra, from its own ruling on the term "insurability." The Sussex case, supra, is further distinguishable under Missouri Law in that the ruling therein is to the effect that the payment of the renewal premium is an extension of the original contract and not the making of a new contract. Several other jurisdictions rule likewise in reinstatement and conversion cases, but not Missouri. State ex rel. Metropolitan Life Insurance Company v. Shain et al; Gibson v. Kansas City Life Ins. Company, Mo.App., 136 S.W. 2d 131; Inter-Southern Life Insurance Company v. Klaber, 8 Cir., 50 F.2d 154. We do not think the Sussex case in point on the issue now before the Court.

The law, and first principles of legal thinking, lead us to the conclusion that plaintiffs are not legally entitled to force defendant to issue a life insurance policy, free of a "war clause," on the life of Jay R. Rosenbloom, under the circumstances here involved. Consequently plaintiffs' causes of action cannot be crowned with success.

The determination and validity of the foregoing premise compels that plaintiffs' motion for a summary judgment be overruled. Defendant's motion for a summary judgment is sustained.

It is so ordered. Counsel prepare decree.