AVERY PRICE, Respondent, v. HIRAM LLOYD
BUILDING AND CONSTRUCTION COMPANY,
Appellant.

St. Louis Court of Appeals, June 8, 1915.

1. **MASTER AND SERVANT: Injury to Servant: Safe Place to Work: Questions for Jury.** In an action by an employee for injuries sustained in jumping from a scaffold formed by a narrow plank laid across two stepladders, when a heavy board which he was holding in position toppled over and was about to fall upon him, evidence *held* sufficient to justify a finding that defendant was negligent in furnishing a scaffold which, by reason of its narrowness and insecurity, did not afford a reasonably safe place for plaintiff to do his work; *held, further,* under the evidence, that plaintiff was not guilty of contributory negligence as a mater of law in using the scaffold, or in permitting the board to topple over.

2. ———: ———: **Contributory Negligence.** An employee injured while using an appliance furnished by the master cannot be held guilty of contributory negligence as a matter of law in using the appliance, unless the danger therefrom was so glaring and obvious as to deter a reasonably prudent man from using it.

3. ———: ———: **Assumption of Risk.** An employee does not assume a risk created by the employer's negligence.

4. **TRIAL PRACTICE: Conflicting Evidence: Questions for Jury.** Where the evidence is conflicting, the question is for the jury.

5. **MASTER AND SERVANT: Injury to Servant: Instructions: Submitting Unnecessary Facts.** In an action by an employee for injuries sustained in jumping from a scaffold formed by a narrow plank laid across two stepladders, when a heavy board which he was holding in position toppled over and was about to fall upon him, an instruction given for plaintiff, which required the jury to find that the scaffold, as constructed, was too narrow and was unstable and insecure and that there was insufficient room thereon for plaintiff to work and move about, and by reason thereof his footing was rendered insecure and he was prevented from so bracing himself as to enable him to hold the board in place and prevent it from becoming overbalanced and falling, and that the "scaffold was so narrow that if said board did fall, there was no room thereon for plaintiff to get out of the way," was not objectionble, because of the quoted

words, on the ground that defendant could not have anticipated that the board would fall and, therefore, was not required to furnish a scaffold wide enough to allow plaintiff to step back far enough to avoid injury, since liability was not predicated upon any such duty and the instruction merely required a finding on those facts conjunctively with a finding on the theory upon which liability was predicated.

6. **INSTRUCTIONS: Submitting Unnecessary Facts: Harmless Error.** An instruction will not be condemned as reversible error for submitting unnecessary facts, where the facts upon which liability is predicated are correctly submitted and the only effect of submitting the other facts is merely to require the jury to find more than is necessary to warrant a recovery.

7. ————: **Credibility of Witnesses.** While there must be something to afford a reasonable basis therefor, to justify the giving of a cautionary instruction, that if the jury believe that any witness has knowingly sworn falsely to any fact material to the issues, they are at liberty to reject all, or any portion, of his testimony, nevertheless where there is a direct and sharp conflict in the testimony as to the material facts, which cannot reasonably be attributed to mistake, inadvertence or lapse of memory, the giving of such an instruction will not be denounced as an abuse of discretion.

8. **DAMAGES: Personal Injuries: Excessiveness of Verdict.** Plaintiff, a man twenty-three years of age, strong and vigorous, was injured in such a way as to necessitate the removal of a bone from the instep of his left foot and the ligaments attached thereto, as a result of which the foot will not only remain weak, but plaintiff will be unable to control it and it will more or less flop as he steps, so that he will be a cripple for life. *Held,* that a verdict for $5000 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

AFFIRMED.

*H. A. & C. R. Hamilton* and *T. E. Francis* for appellant.

(1) There was no evidence of negligence on the part of defendant and the court should have so instructed the jury. Mathis v. Kansas City Stock Yards Co., 185 Mo. 434. (2) The plaintiff assumed the risk

of the inside section of said lintel  falling and the master could not guard against the same, and was not required so to do.  (3)  The court instructed the jury if they found from the evidence that the scaffold upon which plaintiff was working was so narrow that if the lintel which he was building fell, there was not room on the scaffold to get out of its way, then they should find for plaintiff.  The master was not required to anticipate the falling of said lintel and provide a platform of such width as to enable plaintiff to get out of the way of said  falling lintel.  (4)  The second instruction given by the court at its own instance was unwarranted and erroneous.  White v. Maxey; 64 Mo. 552; State v. Hickam, 95 Mo. 322; Berry v. Railroad, 124 Mo. 223; Keeline v. Sealy, 257 Mo. 527; Lloyd v. Meservey, 129 Mo. App. 636.  (5)  The verdict is excessive.

*John A. Blevins* and *J. W. Jamison* for respondent.

(1)  Defendant was negligent in furnishing plaintiff with a scaffold not reasonably safe upon which to do the work required of him.  Combs v. Rountree Const. Co., 205 Mo. 367; Raines v. Lumber Co., 149 Mo. App. 576; Bowen v. Railroad, 95 Mo. 277; Broomfield v. Worcester Const. Co., 118 Mo. App. 257; Houston v. Railroad, 129 Mo. App. 576.  A servant cannot assume to bear the consequences of the master's negligence. Curtis v. McNair, 173 Mo. 270.  The servant does not assume extraordinary risk, or such as are occasioned by the carelessness or negligence of the master.  Brady v. Railroad, 206 Mo. 509.  The doctrine does not apply where the injury was occasioned by the negligence of defendant.  Tinkle v. Railroad, 212 Mo. 445; Patrum v. Railroad, 259 Mo. 121; Fish v. Railroad, 172 S. W. 346.  (2)  The mere fact that plaintiff assisted in putting up the scaffold under the direction of defendant's

foreman would not lessen the responsibility of defendant in the matter. . Combs v. Rountree Const. Co., supra. As a matter of fact, the specifications of negligence set forth in plaintiff's petition, and the evidence in support thereof, were sufficient to make out a case of statutory negligence against appellant under Sec. 7843, R. S. 1909. (3) The court, in the exercise of its discretion, gave instruction number 2, of its own motion; the evidence in the case warranted the giving of such instruction. Miller v. Madison Car Co., 130 Mo. 525; Hartpence v. Rogers, 143 Mo. 634. .(4) The questions of the assumption of risk and contributory negligence were properly submitted to the jury and their finding in favor of the plaintiff on these issues is conclusive. Brady v. Railroad, 205 Mo. 509; Dakan v. Chase, Son & Co., 197 Mo. 266; George v. Railroad, 225 Mo. 406.

ALLEN, J.—This is an action for personal injuries sustained by plaintiff while in the employ of defendant corporation and alleged to have been caused by its negligence. There was a verdict and judgment below for plaintiff, and the case is here upon defendant's appeal.

Defendant is a construction company, and on November 17, 1911, was engaged in erecting a public school building in the city of St. Louis, upon which plaintiff was employed as a carpenter. On the date last mentioned plaintiff was injured while working upon the second floor of the building then in process of construction. It appears that plaintiff and a fellow workman, named Bliven, were engaged in constructing a wooden frame across the top of a window opening in one of the walls of the building, into which frame, when completed, was to be put cement, with metal strips or rods extending through the same, in order to form a lintel of reinforced concrete above this window. The brick wall had been erected to the top of the window

opening, and the lintel was to rest upon the wall with its ends embedded therein. The floor of the second story had been laid, and was of concrete; and plaintiff and his fellow workman were upon this floor engaged in putting in place the lintel frame above mentioned.

It appears that the latter was put up in three sections, as they are termed, consisting of the bottom, the outer section and the inner section. The first two of these had been put in place, and plaintiff and Bliven were putting up the inner section when plaintiff was injured.

Plaintiff's evidence goes to show that this inner section of the lintel frame consisted of four planks fastened together, the whole being from thirty-seven to forty inches in width and about twelve feet long, the lumber used being two inches in thickness. It had been previously used for similar purposes, and plaintiff testified that it had been lying upon the ground in a pool of water formed by rainfall, was water-soaked, and weighed at the time from two hundred to two hundred and fifty pounds. Defendant's testimony is that it was about twenty-nine inches in width, and did not weigh more than one hundred and fifty pounds. In putting the section in place plaintiff and Bliven used a scaffold about ten feet in height formed by placing a plank across the top of two stepladders. It is said that this plank was ten inches wide, two inches in thickness, and about twelve feet long, and that the stepladders were made of light material. It appears that plaintiff and Bliven stood upon this plank while four other men, one of them being defendant's superintendent, passed up to them this section; that they then put it in place along the window opening, resting it upon certain cross-arms that had been prepared to receive it. In this position it formed one of the vertical sides of the trough-like frame for making the lintel. It was not nailed in place. Plaintiff's testimony is to the effect that he had orders not to nail it, but certain braces

were to be put in, and it is said that wires were to be put through the frame to keep the sides from expanding when the concrete was put into it.

The testimony in plaintiff's behalf is that after the section had been thus put in place, Bliven descended from the scaffold in order to get the braces above-mentioned which had been left upon the floor below because of lack of room therefor on the scaffold, leaving plaintiff standing about the middle of the scaffold holding the inner section of the lintel frame in place by leaning his shoulder against it. He was not supporting its weight, for, as said above, it rested on cross-arms, and all that was necessary was to keep it from tipping over. He testified that, as he thus stood, the upper edge of this section was about four inches above his shoulder; and that while he was thus holding it in place the section for some reason began to topple over toward him, and that owing to the narrowness of the plank upon which he was standing and the insecurity of the scaffold he was unable to exert sufficient pressure against it to hold it upright, and that in order to avoid being pushed from the scaffold by the falling section he jumped therefrom to the floor below, whereby he sustained the injuries for which he sues.

The testimony for plaintiff goes to show that defendant's superintendent ordered plaintiff to construct the temporary scaffold upon which he was working, in the precise manner in which it was constructed; that plaintiff was directed to take one of the ''two by ten'' boards which were at hand, and place it across the two stepladders. And plaintiff testified that two or three weeks prior to the day of his injury, the superintendent had ordered him not to thereafter make and use for this work scaffolds formed with a number of bricklayers' trestles and boards, such as plaintiff had been theretofore using, for the reason that this took too much time and was too expensive, but instead to

place a plank across two stepladders, and that plaintiff had protested against this.

Plaintiff did not undertake to say what caused the section of the lintel frame to topple over. There is testimony, however, to the effect that there was "quite a little wind blowing" into the window opening and against the section which plaintiff was attempting to keep in place. Plaintiff says that the section suddenly began to press against his shoulder; that he could not move his feet back to brace himself, and could exert only slight pressure against the upright section of the lintel frame for the reason that the reaction tended to push the light scaffold from beneath his feet; and finding that he was about to be pushed from the plank upon which he was standing he jumped to the floor, calling out a warning to the workman below.

It is unnecessary to notice the pleadings. The theory upon which plaintiff's case proceeds readily appears from the foregoing statement of the evidence adduced in support thereof.

1. It is urged that the trial court should have peremptorily directed a verdict for defendant; but we think it quite clear that the case made by plaintiff was one for the jury. A prima-facie showing of negligence on the part of defendant, in respect to furnishing plaintiff a reasonably safe place to work, appears from plaintiff's testimony, corroborated in certain particulars by other testimony, tending to show that the scaffold upon which he was working was not reasonably safe for the work in which he was engaged; that it was constructed pursuant to the explicit orders and direction of defendant's superintendent, and that the latter had ordered plaintiff, over his protest, not to make and use scaffolding such as he had used on other like work because it took too much time to construct the same. Defendant's evidence tends to show the

191M.A.26

contrary; that the superintendent gave no such orders or directions, and that plaintiff and his fellow workman selected their own material and constructed a scaffold of their own choosing. But the issue thus raised was one for the jury.

Under the circumstances, if the scaffold, formed by a narrow plank laid across two stepladders, by reason of the narrowness and insecurity thereof did not furnish a reasonably safe place for plaintiff to perform the work assigned to him in putting up the section of the frame in question, and plaintiff's injuries are fairly and reasonably attributable thereto, the defendant is liable as for a breach of its duty to furnish a reasonably safe place to work, unless it can be said that plaintiff was guilty of contributory negligence in so using this scaffold. It is quite clear, however, that plaintiff cannot be held to have been guilty of negligence as a matter of law, in using the scaffold, for it does not appear that the danger therefrom was so glaring and obvious as to deter a reasonably prudent man from following the master's directions. Nor can plaintiff be convicted of negligence, as a matter of law, under the evidence adduced, for permitting the section of the lintel frame to topple over. The question of plaintiff's contributory negligence was a matter for the consideration of the jury.

And if the danger was one created by the master's negligence, it was not a risk assumed by the servant. This matter has been so frequently passed upon by our courts as to make it unnecessary to dwell upon it. [See Patrum v. Railroad, 259 Mo. 109, 168 S. W. 622; Crader v. Railroad, 181 Mo. App. l. c. 537, 164 S. W. 678.]

II. Plaintiff's main instruction is complained of. The instruction is lengthy and need not be here reproduced. It requires the jury to find that the scaffold as constructed "was too narrow and was unstable and

insecure, and that there was insufficient room on same for plaintiff to work and move about, as was necessarily required in the course of the work in which he was engaged, and that by reason of the conditions aforesaid plaintiff's footing on said scaffold was rendered insecure and that plaintiff was thereby prevented from so placing and bracing himself as to enable him to exert the necessary force to hold said section of lintel in place and prevent it from becoming overbalanced and falling, *and that said scaffold was so narrow that if said lintel did fall there was not room thereon for the plaintiff to get out of the way.*"

Appellant assails this instruction on the ground that the words italicized above authorize a recovery if the jury find that the section of the lintel frame fell and that there was insufficient room upon the scaffold for plaintiff to get out of the way of the same. And it is argued that defendant could not have anticipated that the section of the lintel frame would topple over, and was not required to furnish a scaffold wide enough to allow plaintiff to step far enough back to avoid injury thereby.

But liability was not predicated upon any such duty on the part of the defendant. The instruction requires the jury to find all of the facts essential to a recovery under the theory upon which the case proceeds. Conjunctively it requires the jury to find that the scaffold was not wide enough to permit plaintiff to move thereupon out of the way of the falling section of the frame. Had it been of sufficient width therefor, though unstable and insecure, plaintiff might not have been justified in jumping to the concrete floor by reason whereof he was injured.

In any event, in view of the fact that the instruction otherwise fully and well covers the case, the adding of these words thereto could not constitute reversible error.

III.   The court of its own motion gave an instruction on the credibility of witnesses and the weight to be given to their testimony.   This instruction is in the usual form and concludes by telling the jury that if they believe that any witness had knowingly sworn falsely to any fact or facts material to the issues in the case, they are at liberty to reject all or any portion of the testimony of such witness.

Error is assigned to the giving of this instruction, upon the ground that there was nothing to indicate that any witness had willfully or intentionally sworn falsely and that it was therefore an abuse of discretion to suggest to the jury that they might disregard all of the testimony of any witness.

While the matter is one resting to a great extent in the discretion of the trial court, it is true that there must be something to afford a reasonable basis therefor in order to justify the court in giving such an instruction.   [See Keeline v. Sealy, 257 Mo. 498, 165 S. W. 1088.]   But where, as here, there is a direct and sharp conflict in the testimony as to material facts, which cannot reasonably be attributed to mistake, inadvertence or lapse of memory, the giving of an instruction of this character could not well be denounced as an abuse of the discretion of the trial judge, who had the witnesses before him and saw their conduct and demeanor upon the stand.   The testimony in the record before us is highly conflicting on the most important issue in the case, viz., whether plaintiff was using a scaffold constructed pursuant to the orders and directions of defendant's superintendent or one entirely of his own choosing.   Nor is this the only direct conflict in the testimony.   It was therefore not reversible error to give this instruction.   [See Schuler v. Insurance Co., 191 Mo. App. 52, —— S. W. ——; Hartpence v. Rogers, 143 Mo. l. c. 634, 45 S. W. 650.]

IV.   Appellant suggests that the verdict which was for $5000, is excessive.   Prior to his injuries plaintiff was evidently a strong, vigorous young man.   He was twenty-three years of age when injured.   It is unnecessary to review in detail the evidence touching his loss.   As a result of his injuries he has become crippled for life.   The evidence shows that it became necessary to remove a bone from the instep of the left foot; and the ligaments attached thereto, in the language of the surgeon who performed the operation, "had to be sacrificed."   Three physicians testified in the case, and their testimony leaves no room for doubt as to the permanency of the injuries.   It appears that the foot will not only remain weak, but that plaintiff will be unable to control it, and that it will "more or less flop" as he steps, because of the fact that certain ligaments are gone.

Under the evidence there is nothing to call for interference by this court because of the extent of the recovery.

We perceive no reversible error in the record, and the judgment should therefore be affirmed.   It is so ordered.   *Reynolds, P. J.,* and *Nortoni, J.,* concur.