MARGARET McDONALD, ADMINISTRATRIX OF THE ESTATE OF GEORGE McDONALD, DE- CEASED, Appellant, v. WILLIAM H. REDE- MEYER, Respondent.

St. Louis Court of Appeals, Opinion Filed November 6, 1917.

1. **TRIAL PRACTICE: Right to Open and Close: Request.** Where de- fendant claimed the right to open and close the case; on read- ing the pleadings, before any evidence was introduced, the court did not err in treating this as a request to open and clase in the introduction of evidence.

2. ———: ———: **Counterclaims.** Even though there was no veri- fied plea of *non est factum*, in an action on notes, and the execu- tion of the notes—importing consideration—stóod admitted under section 1985, Revised Statutes 1909, it was not reversible error to refuse to require the plaintiff to rest on the admission thus arising on the pleadings so that defendant could open the case on a counter- claim.

3. ———: ———: **Harmless Error.** If it was error for the court to al- low defendant to open the case on a counterclaim, in that plain- tiff's case stood admitted, it was harmless, where plaintiff intro- duced no evidence concerning the counterclaim, except on cross- examination.

4. **APPELLATE PRACTICE: Matters Reviewable.** Where no point was made concerning the opening and closing of the argument to the jury, although before evidence was introduced defendant asked to be allowed to "open and clase the case," defendant cannot be heard to complain that he was denied the right to open and close the argument.

5. ———: **Trial Practice: Opening and Closing: Discretion of Court.** Matter of opening and closing rests largely within the discretion of the trial court, and will not be reviewed, except for apparent abuse to the injury of the party complaining.

6. **CONTRACTS: Implied Contracts: Counterclaim: Use of Property: Evidence.** On a counterclaim by defendant for occasional use of horse and buggy during a term of years, and the evidence touch- ing the matter is to the effect that the use of the horse and buggy was intended either as a gratuity or was for defendant's benefit, evidence, *held* to warrant a directed verdict for the plaintiff.

7. ———: ———: ———: ———: **Voluntary Services: Intent as to Compensation.** There can be no recovery for services rendered

voluntarily, or for the use of a thing voluntarily loaned, with no expectation at the time that compensation would be made therefor, regardless of benefit.

8. **INSTRUCTIONS: Conflicting Evidence: Credibility of Witness.** Where evidence is directly conflicting, and not reasonably attributable to mistake, inadvertence, or lapse of memory, it was not an abuse of discretion for the court to instruct as to the credibility of witnesses.

9. **TRIAL PRACTICE: Exclusion of Inconsequential Evidence: Harmless Error.** In an action by an administratrix in which defendant by counterclaim alleged that he and deceased were buying and selling land together, evidence that defendant ordered a certificate of title, which was intended for and delivered to deceased, was so inconsequential that its exclusion was not reversible error.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. George C. Hitchcock*, Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1)   The plaintiff's suit being on notes, and the answer not being verified, her causes of action were admitted, and there was no necesity of evidence on her part. 1 Rev. Stat. 1909, sec. 1985; Hahs v. Railroad, 147 Mo. App. 262; Hart v. Harrison W. Co., 91 Mo. 414; Smith M. P. Co. v. Rembaugh, 21 Mo. App. 390; Johnson v. Woodmen of the World, 19 Mo. App. 98; Love v. Central L. Ins. Co., 92 Mo. App. 192; Mitchell v. Tinsley, 83 Mo. App. 586. Therefore the only isues to be tried were those arising on the counterclaims and the court erred in refusing to give defendant the opening and close in the case. Grant Quarry Co. v. Lyons Const. Co., 72 Mo. App. 530; Ferguson v. Rittman, 180 S. W. 1046. (2) The court erred in excluding Mr. Dammert's statements and the entries in his books. Lyons v. Corder, 253 Mo. 539; Robinson v. Smith, 111 Mo. 205; Milling Co. v. Walsh, 108 Mo. 277; Schwall v. Higginsville M. Co., 190 S. W. 959. (3) The court erred in refusing defendant's instruction A, and in giving plaintiff's instruction 3, on the first counterclaim. Sprague v. Sea, 152 Mo. 327; Nu-

gent v. Armour P. Co., 208 Mo. 480; Silver v. Railroad, 125 Mo. App. 402; Chilton v. Halstead, 149 Mo. App. 144; Bender v. Railroad, 137 Mo. 240. (4) The court erred in giving instruction 5. Iron Mt. Bank v. Murdock, 62 Mo. 70; Reed v. City of Mexico, 101 Mo. App. 155. (5) The verdict of the jury on defendant's second counterclaim is so strongly against the weight of the evidence that the court erred in failing to set it aside.

*Seneca C. Taylor* for respondent.

ALLEN, J.—Plaintiff is the widow of George McDonald, deceased, who departed this life on August 14, 1912, and sues as administratrix of his estate. The action is upon two promissory notes executed by the defendant to the order of said George McDonald, one in the sum of $2000, of date August 27, 1911, bearing five per cent. interest, and the other in the sum of $1000, of date October 1, 1911, bearing six per cent. interest. The petition is in the usual form.

The answer admits that plaintiff is the administratrix of the said estate, but denies each and every other allegation of each count of the petition. The defendant then sets up two counterclaims.

For his first counterclaim defendant alleges that on various specific dates set out, commencing with August 3, 1907, and ending with July 31, 1912, defendant, at the special instance and request of said George McDonald, furnished the latter for use in his business a horse and buggy, the reasonable value of the use thereof being $3 per day. Judgment is prayed for $906.

The second counterclaim is for one-half of the profits alleged to have been realized in a transaction in which, it is alleged, McDonald furnished the money for purchasing certain real estate for future sale, upon the agreement with defendant that the profits should be equally divided between McDonald and defendant. Judgment is prayed for $1387.83.

The cause was tried before the court and a jury, and at the close of all the evidence in the case the

court, at plaintiff's request, directed a verdict for plaintiff upon the two notes sued upon, and likewise directed a verdict for plaintiff, on defendant's first counterclaim. The second counterclaim was given to the jury under an instruction offered by defendant together with an instruction (on the credibility of witnesses and the weight to be given to their testimony) given by the court of its own motion.

The jury returned a verdict for plaintiff on the notes and for plaintiff on both of defendant's counterclaims, and from a judgment duly entered thereon the defendant prosecutes this appeal.

I. The first assignment of error relates to the action of the court, at the opening of the trial below, in denying the defendant the right to "open and close the case." The record discloses that at the beginning of the trial, after the pleadings had been read to the jury, but prior to the reception of any evidence, the following colloquy took place:

"Mr. Kinealy (defendant's counsel): We have the opening and closing of the case.

"Mr. Taylor (plaintiff's counsel): If Judge Kinealy will make the admission that the notes were issued by Redemeyer and he received the money, I will agree to that. Defendant having read the answer to the jury and denied the execution of the notes and the receipt of the money, is not entitled to the opening and closing of the case unless he admits before the jury that the notes were issued by Redemeyer and the money received by them.

"Mr. Kinealy: Our position is, on the record in this case, on the pleadings, we are entitled to open and close, if your Honor please, and I will ask the right to open and close the case.

"The Court: Without making that admission?

"Mr. Kinealy: We claim the right on the record.

"The Court: It will be overruled."

Defendant excepted to the court's ruling. Thereupon plaintiff, Margaret McDonald, was called as a witness. She identified the defendant's signature upon the

notes and they were offered in evidence. She also testified that after the death of her husband defendant repeatedly promised to pay the notes. On cross-examination she was questioned regarding defendant's counterclaims, concerning which she then testified further on redirect examination. Plaintiff thereupon rested, and defendant proceeded with his evidence in support of his counterclaim. Plaintiff later put on evidence to rebut that offered by defendant.

After the giving of the instructions mentioned, the case went to the jury on defendant's second counterclaim, as stated above, without any request by defendant's counsel to be allowed to open and close the argument.

It is argued for defendant, appellant here, that, as the pleadings stood, plaintiff's causes of action on the notes were admitted, leaving nothing in the case but the counterclaim, as to which the burden rested upon defendant; that defendant was therefore "entitled to the opening and closing in the matter of introducing evidence and the argument of the case to the jury." And that the denial thereof was highly prejudicial to defendant and constituted reversible error.

But from what we have stated above we think that it will be readily seen that the ruling complained of was not one denying defendant's counsel the right to open and close the argument to the jury. Indeed nothing appears in the record respecting the argument of counsel before the jury. The request or demand by defendant to be allowed "to open and close the case," made as it was at the beginning of the trial, after the reading of the pleadings and before the introduction of any evidence, could have had reference, it seems, only to the question of defendant's right to proceed forthwith to put in his evidence on the counterclaims; as the court evidently treated it. In the view most favorable to defendant, this demand included the assertion of such right; and we regard it as clear that defendant has no cause to complain of the court's ruling.

It is true that since there was no verified plea of *non est factum,* the execution of the notes—importing consideration—stood admitted (Sec. 1895, Rev. Stat. 1909); and no affirmative defense was interposed. In the absence of the counterclaims, plaintiff would have been entitled to judgment on the pleadings. And it may be, as argued by appellant's learned counsel, that it was not necessary that the notes be introduced in evidence. But we think that it cannot be doubted that the court was not bound to require plaintiff to rest on the admission arising on the pleadings by virtue of the statute mentioned, though it be sufficient to support a judgment; that it was not error to permit her, if she chose, to put the notes in evidence, and thus establish by proof the causes of action pleaded, before defendant proceeded with his counterclaim. That it was unnecessary for plaintiff to identify the signature is immaterial here. Plaintiff did not undertake to testify concerning the counterclaims until cross-examined thereon by defendant. In any event, defendant cannot be said to have been prejudiced by the course pursued with respect to the introduction of evidence.

It may be conceded that, since the court's instructions left nothing in the case for the consideration of the jury but a counterclaim, as to which defendant had the burden, defendant's counsel was entitled to open and close the argument to the jury. But having made no point of this particular matter below, defendant can not now be heard to complain thereof upon the theory that he was denied such right by the court's ruling, at the outset of the trial, to the effect that he was not entitled "to open and close the case."

Whether it would have been reversible error had the court refused a specific request of defendant to be allowed to open and close the argument, under the circumstances of the case, we need not decide. The matter of opening and closing the argument is one resting largely within the discretion of the trial court, which "will not be reviewed unless it is apparent that it has been abused to the injury of the party complaining."

[Cape Girardeau & Chester R. R. Co. v. Blechle, 234 Mo. 471, 484, 485, 137 S. W. 974.]

We therefore rule this assignment of error against the appellant.

II. A further assignment of error relates to the action of the court in directing a verdict for plaintiff on defendant's first counterclaim.

The evidence is that McDonald, for many years prior to his death, owned a number of horses and vehicles; that he did work for the city of St. Louis with teams, and rented out peddling wagons to peddlers; that he had a storm buggy "run-about" and "park wagon," and kept one particular driving horse for his own use. It appears that he was also the owner of considerable real estate, and frequently loaned money. He and the defendant were close friends.

Defendant was in the produce business in the city of St. Louis, and it seems that McDonald purchased supplies from him.

The testimony of defendant's witnesses in support of this counterclaim shows that for some years prior to McDonald's death he drove, from time to time, a horse and buggy belonging to defendant. One witness —defendant's foreman—said that during the last five years of McDonald's life "he used to get the buggy" frequently, "perhaps a couple of times a week." Another witness, who worked for defendant about a year and six months, testified that McDonald got defendant's horse and buggy "the first and last day of each month," "about twice or three times a month," during the period mentioned. On cross-examination this witness said: "Mr. Redemeyer's horse had to be used right along or else he would get wild standing in the stable."

Other witnesses testified to having occasionally seen McDonald driving defendant's horse and buggy.

Other testimony adduced shows that McDonald had no reason to hire defendant's horse and buggy, having horses and vehicles of his own; and that such use as he did make thereof was either for the purpose of taking home produce from defendant's place of business, for

himself or defendant or both, or was at defendant's request and for the purpose of exercising the horse. The evidence is that defendant suffered from rheumatism and was unable to drive the horse regularly, and the animal became "wild" from standing in the stable; and that on this account defendant requested his friend Mc-Donald to make some use of the horse and buggy.

We may add that there is no evidence that any record was kept of the matter, nor that any demand was ever made upon the deceased or plaintiff administratrix. On the contrary there is abundant evidence that defendant, when pressed for payment of the notes, acknowledged the indebtedness and made various promises, to plaintiff and her counsel, that he would pay the same without suggestion that he had any claim whatsoever against the estate. And while defendant asserts that during the period mentioned he told plaintiff and her counsel of his demand upon which the second counterclaim is based, he does not claim to have mentioned the subject-matter of this first counterclaim.

Under the circumstances we think that the court committed no error in directing a verdict for plaintiff on this counterclaim. While there is some evidence that McDonald at times drove a horse and buggy belonging to defendant (without reference to the specific dates mentioned in the account), there is no evidence that such use thereof was at McDonald's request and for his benefit. On the contrary all the evidence touching the matter is to the effect that the use of the horse and buggy was intended either as a gratuity or was for defendant's benefit and upon his request. There is much positive evidence to this effect, and nothing appears in defendant's evidence tending in any wise to contradict it. Indeed the evidence adduced by defendant, in so far as it makes any showing on the subject, tends to make it appear that during the period of years involved there was no intention on defendant's part to charge for the use of the horse and buggy, or expectation on the part of McDonald to make compensation therefor. And though there is evidence that McDonald's use of the horse and

buggy extended over a period of eight years or more prior to 1912, it does not appear that defendant ever asserted a claim, or did aught to indicate that he expected compensation, until the filing of this counterclaim in 1914. On the contrary he executed these notes to McDonald in 1911, within one year prior to the latter's death, evidently for money borrowed.

It is argued for appellant that evidence that the horse and buggy was used by McDonald sufficed to raise an implied promise on his part to pay the reasonable value therefor, making out a prima-facie case; and that evidence tending to show that such use was gratuitous was a matter to be reckoned with by the jury. And in support of this contention appellant cites: Sprague v. Sea, 152 Mo. 327, l. c. 332, 53 S. W. 1074; Nugent v. Armour Packing Co., 208 Mo. 480, 491, 106 S. W. 648; Silver v. Railway Co., 125 Mo. App. 402, 406, 102 S. W. 621. As to these cases it is sufficient to say that we think that they are not here controlling. If some substantial evidence were present tending to show a furnishing of the horse and buggy to McDonald at his request, under circumstances warranting the inference of a mutual intention that compensation therefor be made, or that when he accepted and used the same he knew, or the circumstances were such that he ought to have known, that compensation was expected, the matter would be one for the jury. But all the facts and circumstances in evidence tend to show that the use in question was gratuitous with no intention on the part of either party that compensation be made. And there can be no recovery for services rendered voluntarily, or for the use of a thing voluntarily loaned to another, with no expectation at the time that compensation would be made therefor; and this regardless of whether or not the services or the use were beneficial. [See Sidway v. Land & Live Stock Co., 187 Mo. 663, 86 S. W. 150.]

"Where a party voluntarily does an act or renders services, and there was no intention at the time that he should charge therefor, or understanding that the other should pay, he will not be permitted to recover, for

that whch was intended orig+nally as a gratuity cannot be subsequently turned, into a charge'' Allen's Admx. v. Richmond College, 41 Mo. 302; Hyde, v. Honiter, 175 Mo. App. l. c. 597, 158 S. W. 831); though ''where there is no relationship between the parties and one accepts and retains the beneficial results of another's services which he had no reason to suppose were gratuitous, and which he could or could not accept at his option, the law will imply a previous request for the services and a promise to pay what they were reasonably worth.'' [Kinner v. Tschirpe, 54 Mo. App. 575; Wagner v. Edison Electric Illuminating Co., 177 Mo. 44, 75 S. W. 966.]

The evidence in the record before us makes it appear that McDonald had every reason to suppose that the horse and buggy were furnished him gratuitously; and we perceive nothing to justify a contrary presumption or inference. Under the circumstances we think that defendant failed to make out a prima-facie case on this counterclaim, and that the court did not err in peremptorily directing a verdict for plaintiff thereon.

III.  Appellant also assigns as error the action of the trial court in giving the instruction on the credibility of witnesses mentioned above, which, among other things, told the jury that if they believed that any witness had knowingly sworn falsely to any fact or facts material to the issues in the case, they were at liberty to reject all or any part of such testimony. But in view of the fact that there is a direct conflict between the testimony of defendant and that of plaintiff and her witnesses as to defendant's statements after McDonald's death, having a bearing upon the issues involved in defendant's counterclaim; and not reasonably attributable to mistake, inadvertence or lapse of memory, we think that the giving of this instruction cannot be held to. be reversible error as being an abuse of the discretion of the trial judge.  [See Price v. Building and Const. Co., 191 Mo. App. 395, 404, 177 S. W. 700; Schuler v. Met. Life Ins. Co., 191 Mo. App. 52, 74, 75,

176 S. W. 274; Cohen v. Railway Co., 193 Mo. App. 69, 76, 77, 181 S. W. 1080.].

Appellant also assigns as error the ruling of the court in excluding, on objection of plaintiff's counsel, certain evidence sought to be introduced by defendant on the second counterclaim. It appears from defendant's offer of proof that the evidene excluded would have tended to show merely that a certain certificate of title ordered by defendant from a title examiner was intended for McDonald and delivered to him. This evidence, if having any probative force on the issue on trial, was so far inconsequential that we could not with propriety hold that its exclusion was reversible error.

It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.